IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JESUS TELE WOMACK, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-11-3711 |
| J. P. MORGAN, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Jesus Tele Womack ("Womack") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants J. P. Morgan, Lt. McKenzie, Ofc. McKenzie, Ofc. Beal, Ofc. Rice and Ofc. Wilson by their attorneys moved to dismiss or, in the alternative, for summary judgment (ECF No. 10). Plaintiff has responded. ECF Nos. 16 & 17. After review of the papers, exhibits, and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion, construed as a Motion for Summary Judgment, will be GRANTED and judgment will be ENTERED in favor of Defendants.

**Background**

Womack, a state inmate, alleges that on March 21, 2010, the cell which he shared with inmate Dante Johnson was searched by Defendants Beal, Wilson and Rice. Womack claims that a number of his belongings were destroyed or were missing after the cell search. He states that the officers failed to comply with prison regulations during the search concerning the confiscation of property. Womack claims that chess pieces confiscated during the search were

later returned to him in an oatmeal container filled with urine. Womack states generally that prior to the search he was being harassed by Beal.[1]  ECF No. 1.

The court is in receipt of an affidavit signed by Dante Johnson. Johnson confirms that during the shakedown of the cell, Beal discarded a number of Womack's personal things. When Womack objected, Johnson states, Beal became frustrated, cursed at Womack and used racial slurs while destroying other items belonging to Womack; notably food items and electronics. Johnson further avers that as some of his personal items were being confiscated Beal told him "If you punch your cell buddy in the mouth I'll quash your ticket and give you your [video] game back. You guys are celly's [sic] no one will even know but you two and me." ECF No. 17. Johnson clams that he laughed off this remark. When he received his confiscation form he noticed that some of Womack's property was erroneously listed on his form. He claims that as they were putting their cell back together Womack told him that he was missing tickets and stamps and that Womack believed Beal had stolen them. Johnson states that later that day Womack was called to the lobby area and Beal gave Womack a container with the chess pieces in it. When Womack returned to the cell he discovered that the chess pieces were in what appeared to be urine. Johnson avers that on March 26, 2010, he advised Lt. Natalie about what had happened during the cell search and Womack's efforts thereafter to speak to a lieutenant which were thwarted by the unit officers. When Johnson returned from this discussion Beal asked him about the substance of his conversation with Lt. Natalie. Johnson states that about an hour later Beal told him to pack up Womack's property because Womack was going on lock up. *Id.*

---

[1] In his opposition to the pending dispositive motion Womack appears to amplify this claim by stating that Beal tried to recruit inmates to assault him. ECF No. 16.

Plaintiff alleges that a few days after the search LaRue spoke to Womack in the presence of Beal and Rice and asked him for whatever evidence he had regarding the cell search and alleged urine contamination of property. When Womack stated he did not have any evidence he claims he was placed in solitary confinement and given a false charge for threatening officers. He states that Beal slammed his head into the holding cage a couple of times and threatened him. ECF No. 1.

Womack states that he wrote to Warden Morgan who came to see him along with Lt. Friend. Womack was advised that the matter would be investigated. He states a few hours later he was taken off of segregation because no merit was found to the allegations filed against him by LaRue, Beal and Rice. He states that all charges against him were subsequently dropped. *Id*.

Defendants maintain that during the March 21, 2010, search of Womack and Johnson's cell no property belonging to Womack was confiscated. ECF No. 10, Exs. 1-3. Evidence reflects that Womack filed a request for administrative remedy on March 25, 2010, alleging that some of his personal property was improperly confiscated or destroyed during the cell search. *Id*., Ex. 1 & 4. The ARP was referred to IIU for investigation.[2] *Id*., Ex. 4.

Defendants further indicate that on March 26, 2010, Plaintiff was transferred to disciplinary segregation due to his aggressive conduct toward Officer LaRue. The Notice of Inmate Rule Violation indicates that when LaRue spoke to Womack regarding his property concerns, Womack told LaRue "Don't fucking worry about it, my people on the street are handling [sic] it." When further pressed about the property issue, Womack stated, among other things, "You can take this as a threat or whatever, but I will deal with you later." Rice handcuffed Womack and escorted him to the segregation unit. *Id*., Ex. 5. Beal did not take part

---

[2] Defendants have not provided any documents concerning the IIU investigation to the court.

in the transport and specifically denies having slammed any part of Womack into a wall at any time.[3]  *Id.*, Exs. 2 & 5.

## Standard of Review

A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.  Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[3] Beal also denies confiscating, destroying or urinating on Womack's property as alleged. *Id.*, Ex. 2.

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

A.   Property Claim

In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[4]  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[5]   The parties dispute

---

[4] Womack may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

whether any property was taken from Womack during the cell search. Assuming, however, the property was taken, tampered with, and/or destroyed as alleged by Womack, such a claim does not rise to a constitutional violation.[6]

Moreover, to the extent that written directives were not followed concerning the confiscation of Womack's property, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[7]

B.   Harassment

Womack's claim that Beal harassed him is likewise subject to dismissal. Verbal abuse of inmates by guards, without more, states no claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *see also Carter v. Morris*, 164 F. 3d 215, 219, fn. 3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). The threat alleged in this case is not condoned by this court, but it falls short of acts forbidden by the Fourth, the Fourteenth, or the Eighth Amendments. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

Further, to the extent Plaintiff specifically alleges that urinating on his property amounted to cruel and unusual punishment his claim must be dismissed. Conditions which "deprive

---

[5] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing Plaintiff's due process claim.

[6] In rejecting a prisoner's Fourth Amendment claim to an expectation of privacy in his cell, the Supreme Court, stated that rejecting such a claim did not "mean that [a prisoner] is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.' By the same token, there are adequate state tort and common-law remedies available to respondent to redress the alleged destruction of his personal property." *Hudson v. Palmer*, 486 U.S. 517, 530 (1984).

[7] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

6

inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.' *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

While the court finds allegations that correctional officers urinated on Womack's personal property reprehensible, and further finds that such allegations demonstrate a sufficiently culpable state of mind in order to satisfy the subjective component of an Eighth Amendment

claim, Womack has neither alleged nor demonstrated a serious or significant physical or emotional injury resulting from the conduct. As such his claim fails.

C.      Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

Defendants deny that Womack was assaulted as alleged in the complaint. The record evidence, un-contradicted by Womack, demonstrates that Rice, not Beal, escorted Womack to the segregation cell on March 26, 2010. ECF No. 10, Ex. 2. Simply stated, the un-contradicted evidence demonstrates that Beal was not involved in the March 26, 2010 incident or Womack's escort to segregation. *Id*.

A separate Order follows.

Date:   September 24, 2012                         /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge